IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SUPERIOR PERFORMERS, LLC, d/b/a NATIONAL AGENTS ALLIANCE, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )  1:22cv850 ) |
| JASON CAREY and TAWNY CAREY, | ) ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

THOMAS D. SCHROEDER, District Judge.

This is a contract dispute between Plaintiff Superior Performers, LLC, d/b/a National Agents Alliance ("NAA"), and Defendants Jason and Tawny Carey. Before the court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 17.)[1] For the reasons set forth below, the motion will be granted in part and denied in part.

**I. BACKGROUND**

The facts outlined in NAA's amended complaint (the "complaint") (Doc. 13), which are taken as true for the purpose of the present motion, show the following:

NAA is a Delaware limited liability company with its principal place of business in Alamance County, North Carolina. (Doc. 13

---

[1] Also pending before this court is a related action, 1:22-cv-955, by Alliance Commission Enhancement, LLC, against these same Defendants for money owed and injunctive relief.

¶ 1.) It is the successor-in-interest to Superior Performance, Inc., which was converted to a Delaware limited liability company on July 7, 2020. (Id.) NAA recruits and trains sales agents, who are independent contractors, to sell insurance for insurance companies. (Id. ¶ 5.) In return for the "significant expenses and investment that [NAA] makes for the benefit of the Agents[,]" NAA receives a portion of the commissions its agents earn for selling insurance policies. (Id. ¶¶ 5-6.)

Defendants are citizens and residents of Nevada and are husband and wife. (Id. ¶ 2.) They became sales agents with NAA, each signing "various contracts[,]" including an "Agent Agreement" signed by Ms. Carey in 2014 and an "Independent Contractor Agreement" ("ICA") signed by Mr. Carey in 2019. (Id. ¶ 7.)[2]

The Agent Agreement (Doc. 13-1) and ICA (Doc. 13-2) prohibit the following conduct by each respective Defendant:

> a. [S]oliciting any of NAA's Agents for the provision of services or employment;
>
> b. [A]dvising or recommending to any other person that they employ or solicit for the engagement of services any Agents;
>
> c. [E]ncouraging any Agent to discontinue his or her business relationship with NAA;
>
> d. [D]irectly or indirectly obtaining any other appointment with any of NAA's carriers to solicit or

---

[2] The court assumes for the purpose of this motion that these agreements are governed by North Carolina law, as the parties have exclusively cited North Carolina cases in this case.

2

> sell life insurance products, without NAA's prior written consent; and
>
> e. [E]stablishing any business relationship related to the sale of life insurance products with any of NAA's Agents or "customers" (as that term is defined in the Agent Agreement [and ICA]).

(Doc. 13 ¶¶ 8, 10.) Both agreements also allegedly prohibit the disclosure or use of NAA's confidential information for Defendants' own purposes, require that Defendants hold NAA harmless for any breaches of the agreements, and require that Defendants pay NAA liquidated damages in the event of breaches. (Id. ¶ 9, 11, 13.) Both agreements contain an implied covenant of good faith and fair dealing. (Id. ¶ 14.) Only Mr. Carey's ICA contains a term that "prohibits Jason Carey from disparaging NAA or any person associated with NAA." (Id. ¶ 12.) NAA alleges that this "includes agents of Jason Carey acting on his behalf, including Tawny Carey." (Id.)

NAA alleges a number of "deliberate" breaches, including "[s]oliciting existing NAA customers to terminate policies issued through NAA and to purchase replacement policies through Jason Carey"; "[s]oliciting existing NAA clients to leave NAA and become associated with the Careys"; and "obtaining appointments with one or more of NAA's carriers for the purpose of selling life insurance and without NAA's consent, both directly for themselves and indirectly on behalf of a corporation they created." (Id. ¶ 17.) NAA also alleges that Defendants "us[ed] NAA's confidential

3

information for their own purposes." (Id. ¶ 19.)

Moreover, NAA alleges breaches of "disparagement and breaches of the covenant of good faith and fair dealing." (Id. ¶ 18.) It points to a nineteen-page memorandum that contained "multiple false and disparaging statements regarding NAA and Andy Albright, the senior-most member of [NAA's] management." (Id.) NAA alleges that Ms. Carey distributed the memorandum to various persons, including other NAA agents, to "harm both NAA and its senior leadership." (Id.) Allegedly, Defendants made "numerous disparaging and harmful statements," including via the memorandum, to "extract financial payments and commercial benefits from NAA," and to "renegotiate the [Agent Agreement and ICA]," without a good faith basis to do so. (Id. ¶¶ 20-21.)[3]

NAA also alleges that Mr. Carey filed a complaint with the Nevada Department of Business and Industry ("NDBI") that claimed that NAA had misclassified Defendants as independent contractors, rather than employees. (Id. ¶ 22.) NAA alleges that the NDBI informed it that the Nevada Department of Labor was not pursuing the complaint. (Id. ¶ 24.)

Relying on these allegations, NAA brought two causes of action: the first for breach of contract (id. ¶¶ 25-30), and the

---

[3] NAA did not file the memorandum but represented that all parties have a copy of it and that it would file a copy under seal should the court find it necessary. (Id. ¶ 18 n.2.)

second for a declaratory judgment "that the relationship between the parties was always one of independent contractor and principal, and not employee-employer or otherwise" (id. ¶ 31-35). NAA seeks injunctive relief "enjoining Defendants from further violations of the Agreements[,]" compensatory and liquidated damages, and a declaratory judgment clarifying the relationship between the parties. (Id. at 9.) It also requests attorneys' fees, costs, and "such other relief as the Court deems just and proper." (Id.)

Following amendment of the complaint, Defendants filed the present motion to dismiss. (Doc. 17.) The motion is fully briefed and ready for resolution.

**II. ANALYSIS**

    **A. Standard of Review**

A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94

5

(2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**B.   Breach of Contract**

Defendants argue that the complaint fails to state a claim for breach of contract because it makes no "specific allegations concerning Ms. Carey's alleged breach" and contains a "mere 'bare bones' recitation of the elements of breach of contract concerning Mr. Carey." (Doc. 18 at 7.) Regarding the nineteen-page memorandum, Defendants argue that Ms. Carey is not subject to the non-disparagement provision contained in Mr. Carey's agreement. (Id. at 10.) Moreover, in Defendants' view, the court should not accept the allegation that Ms. Carey was acting on behalf of Mr. Carey as his agent because such an allegation is a legal

6

conclusion. (Doc. 21 at 4.) In addition, Defendants maintain that the other alleged breaches lack any specificity and amount to recitations of contract terms with a bare assertion of a violation by Defendants. (Doc. 18 at 10, 12.) Finally, Defendants contend that the allegation that NAA "has suffered damages as the result of each Defendant's breach of contract" is insufficient. (Id. at 11 (citing Doc. 13 ¶ 29).)

In response, NAA argues that it has met its pleading burden. In particular, it claims that both Defendants breached contract terms through the circulation of the allegedly disparaging memorandum. (Doc. 20 at 7-8.) Regarding Ms. Carey, NAA contends that she breached the term prohibiting her from encouraging its agents from severing, discontinuing, or not renewing any agreement or relationship to it. (Id. at 8.) As to Mr. Carey, NAA maintains that he breached the non-disparagement term through Ms. Carey, acting as his agent. (Id.) NAA further claims that it need not allege "the specifics" of each alleged breach in the complaint so long as Defendants are on notice of the allegations. (Id. at 9-10.) Finally, NAA contests that it has any burden to plead damages with any specificity. (Id. at 6.)

To allege breach of contract in North Carolina, a complaint must allege facts sufficient to prove that (1) there was a valid contract between the parties and (2) that the defendant breached the terms of that contract. Eli Rsch., Inc. v. United Commc'ns

7

Grp., LLC, 312 F. Supp. 2d 748, 755 (M.D.N.C. 2004) (citing Poor v. Hill, S.E.2d 838, 843 (N.C. Ct. App. 2000)); see also Sports Med Props., LLC v. Talib, 3:19-cv-82, 2019 WL 3403372, at *3 (W.D.N.C. July 25, 2019) (dismissing breach of contract claim where plaintiff merely recited contract provisions and alleged defendant violated because allegation amounted to legal conclusion). A plaintiff need not allege actual damages. Staffing Advantage LLC v. Definitive Staffing Sols., Inc., 7:20-CV-150, 2021 WL 2426340, at *6 n.7 (E.D.N.C. June 14, 2021) (collecting cases and stating that "North Carolina case law stands for the proposition that actual damages from the alleged breach is not an element of a breach-of-contract claim that must be pleaded").

Every contract includes an "implied covenant of good faith and fair dealing that neither party will do anything that injures the right of the other to receive the benefits of the agreement." Dillon v. Leazer Grp., Inc., 374 F. Supp. 3d 547, 556 (E.D.N.C. 2019) (quoting Bicycle Transit Auth., Inc. v. Bell, 333 S.E.2d 299 (N.C. 1985)). "A defendant cannot breach a covenant of good faith and fair dealing when a claimant fails to establish the defendant breached the underlying contract." Edwards v. JPMorgan Chase Bank, N.A., 1:20-cv-128, 2020 WL 1814423, at *3 (M.D.N.C. Apr. 9, 2020) (quoting McDonald v. Bank of New York Mellon Tr. Co., 816 S.E.2d 861, 864-65 (N.C. Ct. App. 2018)).

While a "contract cannot bind a nonparty," Equal Emp.

8

Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279, 294 (2002), a principal may be held liable for the acts of his or her agent. White v. Consol. Planning, Inc., 603 S.E.2d 147, 157 (N.C. Ct. App. 2004); Colony Assocs. v. Fred L. Clapp & Co., 300 S.E.2d 37, 40 (N.C. Ct. App. 1983). "Two essential elements of an agency relationship are: (1) the authority of the agent to act on behalf of the principal, and (2) the principal's control over the agent." State v. Weaver, 607 S.E.2d 599, 606 (N.C. 2005).

Here, NAA has sufficiently alleged a breach of contract as to each Defendant. As to Ms. Carey, the complaint alleges that she "created and distributed a nineteen-page memorandum that contained multiple false and disparaging statements." (Doc. 13 ¶ 18.) These statements were allegedly distributed to other NAA agents. (Id.) This plausibly alleges a breach of the term of her Agent Agreement, which prohibits her from "encouraging any Agent to discontinue his or her business relationship with NAA." (Id. ¶ 8.) As to Mr. Carey, the complaint plausibly alleges that Ms. Carey acted as his agent in creating and distributing the allegedly disparaging memorandum, as the complaint both alleges that she did this "on his behalf" and that the two defendants are husband and wife. (Id. ¶¶ 2, 12.) It is therefore plausible that Ms. Carey had the authority to act on Mr. Carey's behalf and that she did so under his control. Weaver, 607 S.E.2d at 606. Accordingly, the

9

complaint plausibly alleges that Mr. Carey breached the term prohibiting him from disparaging NAA. (Id. ¶ 12.)

While the factual support for the other alleged breaches — including use of confidential information and obtaining appointments with one or more of NAA's carriers to sell life insurance without its consent — is far from robust, NAA has otherwise plausibly alleged a breach of contract with respect to non-solicitation and non-disparagement. As a result, the motion to dismiss the breach of contract claim will be denied.

**C.  Declaratory Judgment**

Defendants also argue that NAA has not stated a claim for a declaratory judgment that the relationship between it and each Defendant is one of a principal and independent contractor, rather than employee-employer. (Doc. 18 at 15-16.)  In particular, Defendants contend that the resolution of the NDBI complaint mooted that controversy and that no other definite and concrete dispute over the parties' respective relationships exists. (Id. at 16.) NAA responds that there remains a live dispute because there is a continuing threat of litigation or other legal proceedings as to the parties' respective relationships. (Doc. 20 at 12.)  It points specifically to the NDBI complaint, (Doc. 20-1), which they contend demonstrates that Defendants have raised the issue of the parties' respective relationships "a number of times outside that complaint." (Doc. 20 at 12.)

10

Federal courts sitting in diversity may enter declaratory judgments pursuant to 28 U.S.C. § 2201 if three conditions are met: (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court has subject matter jurisdiction over the parties, independent of the request for declaratory relief; and (3) the court does not abuse its discretion in exercising jurisdiction. Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937) (explaining that the "actual controversy" requirement for a declaratory judgment is synonymous with the Article III requirements). The Declaratory Judgment Act does not require courts to issue declaratory relief; "[r]ather, a district court's decision to entertain a claim for declaratory relief is discretionary." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421 (4th Cir. 1998) (per curiam); see also Wilton v. Seven Falls Co., 515 U.S. 277, 290 (1995).

The Fourth Circuit has enumerated several factors that a district court should consider in determining whether to exercise its discretion to entertain a declaratory judgment action. See Aetna, 139 F.3d at 422. These include whether declaratory relief "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief

11

from the uncertainty, insecurity, and controversy giving rise to the proceeding." Id. (internal quotation marks); see also Columbia Gas Transmission, LLC v. Vlahos, 94 F. Supp. 3d 728, 737 (E.D. Va. 2015) (observing actual controversy where "a plaintiff has an objective and reasonable apprehension of future litigation, which is of sufficient immediacy and reality, that declaration of legal rights will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding" (internal quotation marks omitted)).

Here, NAA does not plausibly allege an actual controversy as to the relationship between it and Defendants. The complaint's only factual support for a controversy is the NDBI complaint, which the Nevada Department of Labor has told NAA it is not pursuing. (Doc. 13 ¶ 24.) Notably, the complaint does not allege that Defendants raised the issue of the relationship between them and NAA a "number of times outside" the NDBI complaint. Instead, that argument is improperly raised for the first time in NAA's responsive brief. (Doc. 20 at 12); see Doe v. United States, 381 F. Supp. 3d 573, 605 (M.D.N.C. 2019) ("Courts generally do not consider a plaintiff's factual or legal allegations raised in opposition to a motion to dismiss and not alleged in the complaint.").

According to the NDBI complaint, Defendants informed the human resources department of NAA's parent in 2022 that they

12

believed they were misclassified. (See Doc. 20-1.) Even if the court considered the NDBI complaint, NAA has not demonstrated that it would support a plausible allegation of a concrete threat of future litigation or that there is a "useful" purpose in settling any legal uncertainty about whether Defendants are employees or independent contractors. See Ind-Com, 139 F.3d at 422; Columbia Gas Transmission, 94 F. Supp. 3d at 737; see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint."). Rather, even drawing all reasonable inferences in NAA's favor, the NDBI complaint only shows that Defendants raised the issue internally with NAA once over a year ago and that the issues are "no longer live." Long v. Pekoske, 38 F.4th 417, 422–23 (4th Cir. 2022) (internal quotation marks omitted). As a result, the motion to dismiss NAA's claim for a declaratory judgment will be granted.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the motion to dismiss (Doc. 17) is DENIED as to the first cause of action for breach of contract and GRANTED as to the second cause of action for a declaratory judgment.

                                    /s/   Thomas D. Schroeder
                                  United States District Judge

February 8, 2024

                                       /s/   Thomas D. Schroeder
                                     United States District Judge

February 8, 2024